SAFEWAY STORES, INC., and H. O. Penney, Plaintiffs in Error,

v.

Minnie DOBBS, Defendant in Error.

No. 41289.

Supreme Court of Oklahoma.

Feb. 14, 1967.

James W. Batchelor, Durant, for plaintiffs in error.

Jake Hunt, Oklahoma City, for defendant in error.

JACKSON, Chief Justice.

This is an appeal by defendants, Safeway Stores, Inc., and H. O. Penney, the manager of the Safeway Store in Durant, Oklahoma, from verdict and judgment for plaintiff, Minnie Dobbs, and from order overruling motion for new trial, in an action for damages resulting from a fall suffered by plaintiff in the Durant store.

Defendants argue, among other things, that the court erred in overruling defendants' demurrer to the evidence and motion for directed verdict, thus squarely presenting the question of the sufficiency of the evidence to support the verdict.

Plaintiff testified that she entered the store carrying some soda pop bottles. She said that "I * * * started to turn and go deposit my bottles and my left foot

slipped—felt like ice under it, and so when it slipped why the other one did too and I got a fall". Her sister, who was with her at the time, did not see the actual fall, and did not later inspect the floor. No witness except Mrs. Dobbs testified to the presence of the slippery spot. It may be conceded, however, in view of her testimony, the existence of the slippery spot is supported by competent evidence.

In this case it was the theory of plaintiff that defendants created the dangerous condition by following improper floor-waxing procedures on the Saturday night preceding the accident on Wednesday.

On this point the record shows that defendants used Waxcraft HN–2000 Heavy Duty Maintenance Wax on their floors, and that they diluted it to a solution consisting of two-thirds wax and one-third water. The uncontroverted evidence was to the effect that the lower the proportion of wax in the solution used, the less slippery the floor would be. It was the position of plaintiff that under recommended and approved procedures, defendant should have used a solution of one-eighth wax and seven-eighths water.

The "Waxcraft Maintenance Manual", containing the approved and recommended procedures to be followed in using the HN–2000 wax, was introduced in evidence. Among other things, it shows that two procedures were recommended, which may be designated as the "damp mopping" procedure and the "light scrubbing" procedure. The first one was a "touch-up" procedure and consisted of going over the floors with a damp mop, using a solution of hot water and 8 ounces (about 1 pint) of the wax per gallon of water. Under this procedure, no cleanser was used and the old wax was not taken off the floor.

The uncontroverted evidence shows that the procedure followed by defendants on Saturday night preceding the accident was the "light scrubbing" procedure. The recommendation in the manual was that the floor "should be scrubbed with a mild cleaner solution, rinsed, and a thin coat of HN–2000 wax applied once a week". There was no recommendation that the wax be diluted, and the use of the wax as directed purported to give "beautiful, safe floors" with "antislip" qualities. Also, as heretofore noted, the uncontradicted evidence was that the dilution of the wax with water produced a "less slippery" floor than would be the case if the wax were used without dilution.

The store manager, who witnessed and supervised the Saturday night operation, testified that the regular "light scrubbing" procedure was used. His description of the operation was as follows:

"Well, like I say, I designate employees to do the waxing and mopping and they have a solution of cleaner that is diluted and in a bucket, applied to the floor. Well, this solution is a soapy substance. You apply it to the floor in a wet manner with a mop the same as your wax. You let it set on the floor from ten to fifteen minutes. That is to take up the old wax, if there is any on the floor at the time. Well, we have a cart that carries two buckets. One bucket has a soap solution in it, the other has clear hot water. And we have two mops, one that we use to apply the soap and a clean mop that is used to take up the soap. This soap, after it sets, is taken up with a dry mop, and rinsed in warm water. Well, after the soap is taken up it's allowed to dry, and then after it is dry they come back and they apply the HN–2000 wax in a light coat.

"Q. Now when you refer to the light coat, do you have in mind what you testified to yesterday, the mixture of one-third water and two-thirds wax?

"A. That's right. We dilute it with one-third water."

Mr. S., one of the employees who actually performed the Saturday night operation, testified to substantially the same effect.

Plaintiff asserts among other things that the jury could have found, under the evidence, that the mixture applied to the floor

on Saturday night "had a grossly higher content of wax than any proportion prescribed in the Waxcraft Maintenance Manual." The evidence will not support this conclusion. If we correctly understand the Maintenance Manual, the wax is not required to be diluted in the "light scrubbing" procedure wherein a commercial cleaner is used and the old wax removed before applying the new coat. The eight ounces of wax to one gallon of water formula was prescribed for "damp mopping" or "touch-up" procedure.

In the instant case there is no indication that the waxing was negligently or carelessly performed, or that there was any residue of wax on the floor following the fall. There was no evidence that the floor was slick in any other part of the building, or that any other person had encountered any difficulty with the floor after an application of the wax. No skid marks were observed on the floor following plaintiff's fall.

■ We are of the view that our decision herein must be controlled by J. C. Penney Co. v. Hoover, Okl., 414 P.2d 293, wherein we held:

"A storekeeper must exercise ordinary care to keep that part of his premises ordinarily used by customers in a reasonably safe condition and, because of his superior opportunity to know of dangerous conditions which reasonably would not be known to his customers, when there is, in fact, a condition of danger, he has a duty to warn them; but he is not an insurer, he has a legal right to treat his floors with proper substances, and the fact that a slip and fall occurs does not, of itself, give rise to any presumption of negligence."

See also Sooner Foods, Inc. v. Eggleston, Okl., 412 P.2d 621, and Joy v. S. H. Kress and Company, Okl., 386 P.2d 148.

Plaintiff relies principally upon two cases, Chase v. Parry, Okl., 326 P.2d 809, and J. C. Penney Co. v. Campbell, Okl., 325 P.2d 1056. However, in Chase v. Parry there was evidence from which the jury could find " * * * that the floor was improperly waxed." There is no comparable evidence in the instant case. In J. C. Penney Company v. Campbell the plaintiff testified that "When I went to get up with my right hand I could feel the floor felt wet and damp and felt slick." Another witness testified "it was just slick, and you could see where she had fell; slick". Also marks were left on the floor where her foot slipped. The court concluded that the dangerous condition should have been known by the storekeeper. Comparable facts indicative of negligence are not present in the instant case. See our discussion of the J. C. Penney case in Joy v. S. H. Kress and Co., supra.

■ After a careful examination of the record in this case we can only conclude the evidence does not disclose that the waxing was negligently performed, and there was nothing in the appearance of the floor to put the defendants upon notice of a dangerous or slippery condition.

■ Where defendant demurs to the evidence and requests a directed verdict, this court will examine the record, and if, upon examination, it is found that there is no evidence reasonably tending to support the verdict and judgment for plaintiff, such judgment will be reversed. J. C. Penney Company v. Johnson, Okl., 364 P.2d 1111.

The judgment of the trial court is reversed.

DAVISON, BERRY, LAVENDER and McINERNEY, JJ., concur.

IRWIN, V. C. J., and WILLIAMS and BLACKBIRD, JJ., dissent.